IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUAN LUIS-RICARDO,

   Petitioner,

  v.

CHARLES A. DANIELS, Warden, FCI
Sheridan, Federal Bureau of Prisons,

   Respondent.

Civil No. 06-599 AS

FINDINGS AND RECOMMENDATION

JUAN LUIS-RICARDO
Federal Register Number 64302-008
FCI, Sheridan
P.O. Box 5000
Sheridan, Oregon 97378-5000

  *Pro Se* Petitioner

1 - FINDINGS AND RECOMMENDATION -

KARIN J. IMMERGUT
United States Attorney
SCOTT ERIK ASPHAUG
Assistant United States Attorney
United States Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

       Attorneys for Respondent

**ASHMANSKAS, Magistrate Judge**.

Petitioner, an inmate at Federal Correctional Institution (FCI) Sheridan, Oregon, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. Petitioner alleges deliberate indifference to his serious medical condition in violation of the Eighth Amendment Cruel and Unusual Punishment Clause.

For the reasons set forth below, the Petition for Writ of Habeas Corpus (#1) should be denied, and this proceeding dismissed.

### **BACKGROUND**[1]

On April 12, 2002, Petitioner arrived at the Federal Detention Center, Sheridan. On January 13, 2003, the Honorable Anna J. Brown, of this court, convicted Petitioner on charges of distribution of cocaine and illegal re-entry, and sentenced him to 70 months imprisonment. The Bureau of Prisons (BOP)

---

[1] The information in this section is taken from Petitioner's Petition for Writ of Habeas Corpus, Respondent's Answer to Petitioner's Writ of Habeas Corpus, and the Declaration of Jonathan Jahnke, M.D. Petitioner did not file a Reply.

2 - FINDINGS AND RECOMMENDATION -

designated Petitioner to FCI Sheridan on February 26, 2003.

Petitioner alleges denial of adequate medical care for a serious medical condition affecting his eyesight: seeing black spots or spider webs, progressively worsening vision, and throbbing headaches. Petitioner also states prison medical staff and Respondent threatened to confine him to a segregated disciplinary cell for the remainder of his incarceration should he persist in seeking medical care for his eye condition.

Petitioner first sought medical care for his eye complaint on May 11, 2004. FCI Sheridan's clinical director, Dr. Muhammed Aslam, referred Petitioner to an ophthalmologist. On June 3, 2004, Dr. Jonathan Jahnke, a board certified ophthalmologist under contract with BOP, examined Petitioner. Petitioner described seeing black spots or spider web images and complained of floaters. Dr. Jahnke diagnosed a posterior vitreous detachment. He noted no retinal tears, and concluded no additional treatment was available, or necessary. The presence of retinal tears might have prompted surgical intervention.

Dr. Jahnke examined Petitioner again on July 8, 2004, November 4, 2004, January 6, 2005 and August 4, 2005. In each instance, Dr. Jahnke noted the absence of retinal tears and concluded no additional treatment was available, or necessary, although he did prescribe some eye drops at one point.

On June 9, 2005, approximately six months after Dr. Jahnke's

3 - FINDINGS AND RECOMMENDATION -

fourth examination, Petitioner filed a request for administrative remedy asking to "see the Ophthalmologist as soon as possible and receive treatment" citing worsening problems with his vision.  On June 21, 2005, Respondent informed Petitioner he was on the schedule to be seen "as soon as ophthalmology clinic is restarted."  Respondent noted Petitioner had not presented to sick call for his complaints of headaches and pain, but was free to do so at any time.

     On June 30, 2005, Petitioner appealed Respondent's decision, asking to "be allowed to see an eye specialist (Ophthalmologist) and receive proper treatment within 30 days."  In his September 16, 2005, reply, the BOP Regional Director noted Petitioner had again been seen by the consulting ophthalmologist on August 4, 2005, and that the physician noted no further visits were indicated unless new symptoms developed.  He encouraged Petitioner to use sick call for changes in his symptoms or condition.

     On October 3, 2005, Petitioner appealed the Regional Director's response, complaining of worsening symptoms and of the fact the consulting ophthalmologist told him "there is nothing wrong with my eyes that can be fixed."  Petitioner enclosed information regarding treatment options his family found on the internet.  He also stated he was threatened with being put "in the hole" if he persisted in seeking treatment for his eye

     4 - FINDINGS AND RECOMMENDATION -

problem. In his November 1, 2005 response, the BOP Administrator of National Inmate Appeals reiterated Petitioner received prompt, professional medical care, had been educated by medical staff about his diagnosis and its treatment, and should use sick call procedures for any concerns with his medical condition.

On April 25, 2006, Petitioner filed this § 2241 petition claiming a deliberate indifference to his serious medical needs after failing to obtain satisfaction through administrative remedies.

## DISCUSSION

I. <u>Habeas v. Bivens</u>

Respondent asserts that § 2241 is not the proper vehicle for Petitioner's claims, but acknowledges two recent Supreme Court cases leave open the option of pursuing "conditions of confinement" claims in habeas proceedings. *See Muhammad v. Close*, 540 U.S. 749 (2004); *Nelson v. Campbell,* 541 U.S. 637 (2004). The parties have not cited, and the Court has not found case law that precludes challenging conditions of confinement under § 2241.[2] Thus, the Court addresses the merits of

---

[2]"The Court's central concern [] has been with how far the general remedy provided by § 1983 may go before it intrudes into the more specific realm of habeas, not the other way around." *Docken v. Chase*, 393 F.3d 1024,1028 (9th Circuit 2004). *See also*, *Hill v. McDonough,* 126 S.Ct. 2096 (June 12, 2006). *Osborne v. District Attorney's Office for Third Judicial District*, 423 F.3d 1050 (9th Circuit, 2005); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Circuit, 2005).

5 - FINDINGS AND RECOMMENDATION -

Petitioner's claims, while recognizing § 1983 and *Bivens* actions as vehicles specific to challenging the constitutionality of conditions of confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 498-99 (1973).

II. <u>Deliberate Indifference</u>

The "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" and states a cause of action under § 1983 and *Bivens*. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *See also Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971). To establish a claim of denial of medical care, a petitioner must first establish a "serious medical need," and second, that respondent was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need exists if the "failure to treat a prisoner's condition could result in further significant injury or an unnecessary and wanton infliction of pain." *Id.* (quoting *Estelle* at 104)(internal quotations omitted).

Deliberate indifference exists when prison officials "deny, delay or intentionally interfere with medical treatment." *Jackson v. McIntosh*, 90 F.3d 330,332 (9th Cir. 1996), *cert. denied,* 519 U.S. 1029 (1996),(quoting *Hunt v. Dental Dept.,* 865 F.2d 198, 201 (9th Cir. 1989)). The "inadvertent failure to provide adequate medical care cannot be said to constitute an

6 - FINDINGS AND RECOMMENDATION -

unnecessary and wanton infliction of pain" and thus, negligence alone in the diagnosis and treatment of a medical condition, does not constitute a valid claim of deliberate indifference. *Estelle,* 429 U.S. 105 at 106 (internal quotation omitted). Rather, a prisoner must show the treatment received was medically unacceptable under the circumstances, and that the choice of treatment was made in "conscious disregard of an excessive risk to plaintiff's health." *Jackson,* 90 F.3d 330 at 332.  A difference of opinion between a prisoner and medical professional regarding the appropriate course of treatment also does not constitute a valid claim.  *See Id.* (citing *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989)).

The Supreme Court has instructed the federal courts to liberally construe the "inartful pleading" of pro se litigants. *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987).  Despite application of this liberal standard, Petitioner has not alleged or proven "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

Petitioner first presented to sick-call with complaints of seeing black spots/spider webs on May 11, 2004.  The medical director of FCI Sheridan quickly referred Petitioner to a specialist and the Court interprets this referral as recognition of a potentially serious medical need outside the expertise of

7 - FINDINGS AND RECOMMENDATION -

Sheridan medical personnel.  On June 4, 2004, less than 30 days after the referral, Petitioner was seen by a Board Certified Ophthalmologist, Dr. Jonathan Jahnke, who diagnosed Petitioner as having posterior vitreous detachment.  As noted, Petitioner was also seen by Dr. Jahnke on at least four subsequent occasions.  Medical staff and the treating physician explained to Petitioner that his diagnosis did not lend itself to further medical intervention, unless retinal tears were seen, and that symptoms generally resolve on their own over time.  The prompt referral to a specialist and subsequent follow-up appointments with that specialist are evidence that prison officials were not deliberately indifferent to Petitioner's medical needs.

Further, Respondent addressed Petitioner's needs in his reply to Petitioner's request for administrative remedy by reminding Petitioner to use the normal sick call process to seek treatment for his medical concerns.  In his reply, Respondent noted Petitioner had not presented to sick call for treatment of his headaches but that he was free to do so.  Petitioner does not claim that he was ever prevented from seeking care through sick call procedures.  In fact, documentation of Petitioner's request for administrative remedy and the related appeals, included in his petition, reveal prison officials encouraged him to use sick-call for his medical complaints.

8 - FINDINGS AND RECOMMENDATION -

Petitioner's dissatisfaction with the treatment he received is not evidence that prison officials have been deliberately indifferent, denied, delayed or intentionally interfered with his medical treatment.  Furthermore, the relief Petitioner seeks, "a full medical examination of the petitioners [sic] visual and optical condition to be completed by a board certified eye surgeon who is licensed to practice medicine in the State of Oregon," is precisely the care he has received.  As a result, Petitioner fails to establish a claim of deliberate indifference to a serious medical condition.

III.  Retaliation

Respondent does not address Petitioner's allegation of threatened retaliation by medical and prison officials for continuing to seek treatment for his eye condition.  Retaliatory actions by prison officials are cognizable civil rights claims. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004) (citing *Pratt v. Rowland*, 65 F.3d 802,806 n#4 (9th Cir. 1995).  However, Petitioner has alleged only *threats* of retaliation if he continues to seek medical care for his eye condition.  Absent evidence of actual retaliatory action, no claim has been stated. *See Gaut v. Sunn*, 810 F.2d 923,925 (9th Circuit, 1987) (per curiam)("[w]e find no case that squarely holds a threat to do an

/ / / / /

9 - FINDINGS AND RECOMMENDATION -

act prohibited by the Constitution is equivalent to doing the act itself.")

## CONCLUSION

For these reasons, Petitioner's Petition for Writ of Habeas Corpus (#1), should be denied and this proceeding dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **September 1, 2006**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 17th day of August, 2006.

       /s/ Donald C. Ashmanskas
       Donald C. Ashmanskas
       United States Magistrate Judge